UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| GARY SWYCK, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:16-CV-489 |
| | § | |
| LORIE DAVIS, *et al*, | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM AND RECOMMENDATION TO GRANT
### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In this prisoner civil rights action, Plaintiff Gary Swyck alleges Eighth Amendment claims of failure to protect. Pending before the undersigned are a Motion for Summary Judgment filed by Defendant Major James A. McKee (D.E. 42) and Plaintiff's Dispositive Motion for a Trial Court Order (D.E. 46). For the reasons stated herein, it is respectfully recommended that Major McKee's summary judgment motion be granted on the basis that he is entitled to qualified immunity and that Plaintiff's Eighth Amendment claim against Defendant McKee be dismissed with prejudice. It is respectfully recommended further that Plaintiff's "Dispositive Motion" be denied. It is further respectfully recommended that the Court also adopt the undersigned's December 8, 2016 M&R. (D.E. 8).

## I. JURISDICTION

The Court has federal question jurisdiction over this civil action pursuant to 28 U.S.C. § 1331. This case was referred to the undersigned United States Magistrate Judge for case management and to furnish a recommendation pursuant to 28 U.S.C. § 636.[1]

## II. PROCEDURAL BACKGROUND

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID) and is currently confined at the Polunsky Unit in Livingston, Texas. In January 2004, Plaintiff was convicted of capital murder and received two life sentences. On February 26, 2016, Plaintiff also was convicted of attempted capital murder for an assault on his cellmate and was sentenced to ninety-nine (99) years in custody.

Plaintiff's allegations in this case arise in connection with his confinement at the McConnell Unit in Beeville, Texas. Plaintiff was housed at the McConnell Unit from approximately February 11, 2004 through part of 2015. On November 14, 2016, Plaintiff filed his original complaint naming the following eight (8) individuals as defendants: (1) Brad Livingston, former TDCJ-CID Director; (2) Kenneth Putnam, Assistant Warden; (3) Corey Furr, Assistant Warden; (4) Major McKee; (5) Major Michael Alsobrook; (6) Emil Garza, TDCJ-CID Assistant Regional Director; (7) Patricia Chapa, TDCJ-CID Assistant Regional Director; and (8) Kimberly Ward, TDCJ Assistant Regional Director. (D.E. 1, pp. 2-3). Plaintiff primarily alleges that Defendants failed to protect him from inmates who had access to Plaintiff's food trays and repeatedly poisoned Plaintiff's food. Plaintiff sues Major

---

[1] *See* Special Order C-2015-01 on file with the District Clerk.

2 / 17

McKee because he was the TDCJ official in charge of administrative segregation at the McConnell Unit where Plaintiff was housed during the times relevant to this lawsuit.

On December 7, 2016, a *Spears*[2] hearing was conducted. On December 8, 2016, the undersigned issued a Memorandum and Recommendation (December 8, 2016 M&R), recommending that the Court: (1) dismiss Plaintiff's claims for monetary damages against all defendants in their official capacities; (2) retain Plaintiff's Eighth Amendment failure to protect claim against Major McKee in his individual capacity; and (3) dismiss Plaintiff's remaining claims against each of the other defendants for failure to state a claim and/or as frivolous. (D.E. 8). Plaintiff has not filed any objections to the December 8, 2016 M&R.

The undersigned ordered service on Major McKee, who filed his answer on January 23, 2017. (D.E. 9, 24). On May 22, 2017, Major McKee filed the instant motion for summary judgment.[3] (D.E. 42). While not responding to the summary judgment motion, Plaintiff has filed a pleading entitled "Dispositive Motion" in which he seeks a trial court order deciding the case in his favor. (D.E. 46).

### III. SUMMARY JUDGMENT EVIDENCE

Major McKee offers the following summary judgment evidence:

Ex. A: Relevant Portions of Plaintiff's TDCJ Medical Records (D.E. 42-1).

Ex. B: Affidavit of Norma Smith (D.E. 42-2).

Ex. C: Declaration of Linda Cole (D.E. 42-3).

---

[2] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

[3] As part of his summary judgment motion, Major McKee seeks dismissal of Plaintiff's claim for monetary damages against Major McKee in his official capacity. (D.E. 42, p. 4). The undersigned, however, recommended the dismissal of this claim in the December 8, 2016 M&R and will not be addressed again herein. (D.E. 8, p. 7).

While Plaintiff has not filed a formal response to the summary judgment motion, he has attached numerous grievances and medical records to both his original complaint and his pleading entitled "Affidavit." (D.E. 1, 40). In addition, Plaintiff's verified complaint and testimony at the *Spears* hearing serve as competent summary judgment evidence. *See Garrett v. Davis*, No. 2:14-CV-70, 2017 WL 1044969, at *3 (S.D. Tex. Mar. 20, 2017). Accordingly, the competent summary judgment evidence establishes the following:

### A. Plaintiff's Evidence

#### (1) Verified Complaint and Spears Hearing Testimony

Plaintiff testified that, while housed in the McConnell Unit, members of the Mexican Mafia prison gang had a contract on his life. While in administrative segregation at the McConnell Unit, Plaintiff received his meals in his cell pursuant to standard procedure. Other inmates, whose identities are unknown, allegedly poisoned Plaintiff's food on repeated occasions while Plaintiff was confined in administrative segregation. Plaintiff alleges that as a direct result of being poisoned, he became sick, suffering stomach cramps, pain in his heart, headaches, nausea, blood in his stool, and excessive nasal drainage.

Plaintiff filed multiple prison grievances complaining about his food being poisoned by inmates trying to kill him. A TDCJ inquiry and response to Plaintiff's grievance revealed that inmates working in the administrative segregation area were delivering food trays to inmates. According to Plaintiff, however, it is against TDCJ regulations for inmates to serve food trays to inmates who are housed in administrative segregation. One grievance response indicates: "This has been noted and it will be monitored. Proper feeding procedures will be followed. No further action warranted." (D.E. 1, p. 25). Plaintiff's

complaints of being poisoned were investigated and were determined by TDCJ officials to be unsubstantiated.

TDCJ officials also conducted an Offender Protection Investigation ("OPI") and determined that no evidence supported Plaintiff's allegations and therefore, no action was taken. Plaintiff sought treatment from the McConnell Unit's medical department where he was seen, but the medical personnel were unable to verify his complaints. Plaintiff was also sent to the TDCJ hospital at University of Texas Medical Branch in Galveston, Texas for an examination which included a colonoscopy. The examination did not provide any proof of poisoning.

In 2015, Plaintiff was transferred from the McConnell Unit to the Ramsey 1 Unit for reasons unrelated to his complaints about being poisoned. Plaintiff testified at the *Spears* hearing he was transferred so he could participate in mental health treatment and other classes which were available at the Ramsey 1 Unit. Plaintiff reported he was still concerned about being poisoned but he has not experienced the same problems since being at the Ramsey 1 Unit. However, Plaintiff testified he continues to experience medical problems as a result of being poisoned including abdominal cramping and chest pains.

### (2) *Plaintiff's Attached Records*

Plaintiff filed a Step 1grievance (Grievance No. 2015085413), dated January 30, 2015, in which he complained about his food being poisoned and the practice of having offenders handle food and trays in violation of both the TDCJ Food Service Procedures Manual and state law. (D.E. 1, p. 12). Plaintiff indicated in this grievance that he had

discussed these issues with Major McKee. (D.E. 1, p. 12). In response, the reviewing official stated that action would be taken if necessary. (D.E. 1, p. 13).

Plaintiff subsequently filed a Step 2 grievance, dated April 30, 2015, asserting that offenders were serving him with poisoned food. (D.E. 1, p. 14). In response, the reviewing officer found that his allegations were appropriately addressed in connection with Grievance No. 2015104744, discussed below. (D.E. 1, p. 15).

Plaintiff filed a second Step 1 grievance (Grievance No. 2015096334), dated February 19, 2015, in which he also complained about his food being poisoned and the practice of having offenders handle food and trays in violation of both the TDCJ Food Service Procedures Manual and state law. (D.E. 1, p. 16). Plaintiff indicated in this grievance that he had discussed these issues with Major McKee. (D.E. 1, p. 16). In response, the reviewing official found that offenders were not authorized to feed trays, that his issues were addressed through staff training, and that the situation would be monitored. (D.E. 1, p. 17).

Plaintiff subsequently filed a Step 2 grievance, dated April 5, 2015, asserting that offenders were serving him with poisoned food and that he was forced to go on hunger strikes. (D.E. 1, p. 18). In a response dated June 11, 2015, the reviewing officer noted that Plaintiff had been reassigned and is no longer confined in the McConnell Unit's segregation area. (D.E. 1, p. 19).

Plaintiff filed a third Step 1 grievance (Grievance No. 2015096865), dated February 24, 2015, in which he complained about his food being poisoned and the practice of having offenders handle food and trays in violation of both the TDCJ Food Service Procedures

Manual and state law. (D.E. 1, p. 20). Plaintiff indicated in this grievance that he had discussed these issues with Major McKee. (D.E. 1, p. 20). In response, the reviewing official found that: (1) an Offender Protection Investigation (OPI) had been initiated regarding Plaintiff's allegations; (2) the McConnell Unit Classification Committee reviewed the OPI on March 3, 2015; and (3) no evidence was presented substantiating Plaintiff's claims that offenders were poisoning his food. (D.E. 1, p. 21).

Plaintiff subsequently filed a Step 2 grievance, dated March 11, 2015, asserting that offenders were serving him with poisoned food and that he was forced to go on hunger strikes. (D.E. 1, p. 22). In a response dated March 30, 2015, the reviewing officer found that Plaintiff's medical records did not "collaborate with [Plaintiff's] allegations of being poisoned" and that no further action was warranted. (D.E. 1, p. 23).

Plaintiff filed a fourth Step 1 grievance (Grievance No. 2015104744), dated March 4, 2015, in which he complained his food being poisoned and the practice of having offenders handle food and trays in violation of both the TDCJ Food Service Procedures Manual and state law. (D.E. 1, pp. 24-25). Plaintiff indicated in this grievance that he had discussed these issues with Major McKee. (D.E. 1, p. 24). In response, the reviewing official found that the investigation had revealed evidence of offenders feeding trays to other offenders but that the situation would be monitored so that proper feeding procedures would be followed. (D.E. 1, p. 25).

Plaintiff subsequently filed a Step 2 grievance, dated April 30, 2015, asserting that offenders were serving him with poisoned food and that he was forced to go on hunger strikes. (D.E. 1, p. 26). In a response dated July 7, 2015, 2015, the reviewing officer found

that Plaintiff's complaints had been appropriately addressed at the Step 1 level. (D.E. 1, p. 27).

Plaintiff filed a fifth Step 1 grievance (Grievance No. 2015139822), dated May 11, 2015, in which he complained about his food being poisoned and the practice of having offenders handle food and trays in violation of both the TDCJ Food Service Procedures Manual and state law. (D.E. 1, p. 28). Plaintiff stated in this grievance that he had discussed these issues with Major McKee. (D.E. 1, p. 28). In response, the reviewing official found that no evidence was presented substantiating Plaintiff's claims and that offenders assigned to work in the segregation area were screened to ensure no gang affiliation. (D.E. 1, p. 29).

Plaintiff subsequently filed a Step 2 grievance, dated August 19, 2015, complaining about being served food in segregation by other offenders. (D.E. 1, p. 30). In a response dated July 7, 2015, 2015, the reviewing officer agreed with the findings issued at the Step 1 level. (D.E. 1, p. 31).

Plaintiff stated in his Affidavit, dated May 15, 2017, that Major McKee "was responsible for the health, safety, welbeing [sic] and security of all offender[s] housed" in segregation at the McConnell Unit and that Plaintiff was poisoned by inmates "not authorized to handle or pass out food or beverages" in the segregation unit. (D.E. 40, p. 1). Plaintiff attached to his affidavit various medical and grievance records, which post-date his time at the McConnell Unit. Plaintiff submitted three completed I-60 forms, dated June 14, 2016, September 15, 2016, and May 4, 2017, respectively, in which he complained about a

hernia condition after undertaking a colonoscopy procedure as well as pains in his stomach and bowels. (D.E. 40, pp. 5-6, 12-15).

Plaintiff filed a Step 1grievance, dated July 3, 2016 (Grievance No. 2016171798), complaining about suffering a hernia following the colonoscopy procedure. (D.E. 40, pp. 7-8). In response, the reviewing officer found Plaintiff's complaint to be unsubstantiated. (D.E. 40, p. 8). Plaintiff filed a Step 2 grievance, dated August 14, 2016, in which Plaintiff reiterated his Step 1 complaint. (D.E. 40, pp. 9-10). The reviewing officer supported the determination made at the Step 1 level. (D.E. 40, p. 10).

### B. Major McKee's Evidence

On February 13, 2015, Plaintiff was seen and treated at the McConnell Unit's medical department after complaining about his food being poisoned. (D.E. 42-1, p. 4). The medical staff drew his blood and conducted laboratory tests. (D.E. 42-1, pp. 4-6). The results of the blood draw and lab tests indicated no evidence of poisoning, and Plaintiff was informed of the findings. (D.E. 42-1, p. 6). The nursing clinical notes, dated February 24, 2015, reflected that Plaintiff's vital signs were within normal limits but that Plaintiff was on a hunger strike. (D.E. 42-1, D.E. 9).

On May 19, 2015, Plaintiff was again seen and treated at the McConnell Unit's medical department. (D.E. 42-1, pp. 7-8). Plaintiff indicated he was intentionally on a hunger strike in order to receive certain personal property. (D.E. 42-1, p. 7). Plaintiff's vital signs were within normal limits, and there is no indication in the medical records that Plaintiff had been poisoned. (D.E. 42-1, pp. 7-8). The nursing clinical notes, dated May 19, 2015, included a mental health referral for Plaintiff. (D.E. 42-1, p. 8).

## IV. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). The Court may not weigh the evidence, or evaluate the credibility of witnesses. *Id.* Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e); *see also Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party

demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed." *Anderson*, 477 U.S. at 250-51.

The usual summary judgment burden of proof is altered in the case of a qualified immunity defense. *See Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). When a government official has pled the defense of qualified immunity, the burden is on the plaintiff to establish that the official's conduct violated clearly established law. *Id.* Plaintiff cannot rest on his pleadings; instead, he must show a genuine issue of material fact concerning the reasonableness of the official's conduct. *Bazan v. Hidalgo County*, 246 F.3d 481, 490 (5th Cir. 2001).

### V.   DISCUSSION

Major McKee moves for summary judgment as to Plaintiff's failure to protect claim on the basis he is entitled to qualified immunity. (D.E. 30, pp. 5-7). The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v.*

*Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

When a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc). To discharge this burden, the plaintiff must satisfy a two-prong test." *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 251-52 (5th Cir. 2005). First, he must claim that the defendants committed a constitutional violation under current law. *Id.* (citation omitted). Second, he must claim that defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of. *Id.* While it will often be appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation occurred and then determining whether the constitutional right was clearly established, that ordering of the analytical steps is no longer mandatory. *Pearson*, 555 U.S. at 236 (receding from *Saucier v. Katz*, 533 U.S. 194 (2001)).

### *Step 1 – Constitutional Violation*

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. It is well settled that the Eighth Amendment's proscription against cruel and unusual punishment requires prison officials to protect inmates from violent attacks by other inmates. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). However, not every injury suffered by one prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety. *Id.*

In order for prison officials to be held liable under the Eighth Amendment for failure to protect, a prisoner must prove that the official knew of and disregarded an excessive risk to the inmate's health and safety; was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and also drew the inference; and failed to take reasonable remedial action. *Id.* at 842-45; *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002). Deliberate indifference describes a state of mind "more blameworthy than negligence;" there must be "more than ordinary lack of due care for the prisoner's interests or safety." *Farmer*, 511 U.S. at 835. Only deliberate indifference will suffice to state a failure to protect claim; mere negligence is not sufficient. *Id*. at 837.

If a plaintiff presents evidence showing that a substantial risk of attacks was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past," and the circumstances suggest that the Defendant-official being sued had been exposed to the information concerning the risk and thus must have known about it, then such evidence could be sufficient to permit a trier of fact to find that the Defendant-official had actual knowledge of the risk. *Farmer*, 511 U.S. at 842-43. In addition, a prison officer also has a duty to intervene and attempt to end an attack on an inmate. *See Buckner v. Hollins*, 983 F.2d 119, 122 (8th Cir. 1993); *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). "An official cannot stand idly by, but rather must intervene or take other reasonable action to protect a detained person from known danger." *Batiste v. City of Beaumont*, 421 F. Supp. 2d 1000, 1005 (E.D. Tex. 2006).

Major McKee contends in his summary judgement motion that Plaintiff has not demonstrated "a substantial risk to his health and safety because there is no evidence that he

was ever poisoned." (D.E. 42, p. 10). Major McKee further contends that there is no competent summary judgment evidence presented to indicate that Major McKee was ever aware Plaintiff had been poisoned or otherwise acted with deliberate indifference to Plaintiff's health and safety. (D.E. 42, p. 11).

In a pleading entitled "Affidavit," Plaintiff stated that Major McKee was responsible for his health and safety and that Plaintiff was poisoned because other offenders were handling and passing out food without any authorization. (D.E. 40, p. 1). In his "Dispositive Motion," Plaintiff indicates that the TDCJ Food Services Procedures Manuel prohibits offenders from handling or passing out food or beverages in the segregation unit. (D.E. 46).

In this case, the uncontroverted summary judgment evidence fails to establish that Plaintiff's health was in any danger from the food he consumed while housed in segregation at the McConnell Unit. The objective medical evidence presented refutes any claim that Plaintiff suffered from food poisoning, and Plaintiff was informed of these medical findings. (D.E. 42-1, p. 6). Thus, no genuine issue of material fact exists as to whether Plaintiff faced a substantial risk of serious harm in that Plaintiff's claim of being poisoned was unsubstantiated and, in fact, controverted by the objective medical records.[4] *See Turner v. Moffett*, No. 3:12-CV-220, 2013 WL 5214070, at *3 (S.D. Tex. Sep. 17, 2013) (recognizing that the court may find allegations to be implausible when contradicted by the objective medical evidence). *See also Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994) (concluding that a prisoner's self-diagnosis alone will not support a medical conclusion);

---

[4] Plaintiff further asserts that it was a violation of TDCJ rules and policy for other inmates to handle Plaintiff's food trays in segregation. However, any alleged failure to follow prison rules and regulations, even if true, does not give rise to a constitutional violation. *See Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996).

*Ahmadi v. Sova*, No. G-04-83, 2007 WL 656544, at *4 (S.D. Tex. Feb. 27, 2007) (quoting *Wesson v. Oglesby*, 910 F.2d 278, 281, 282 (5th Cir. 1990)) (explaining that conclusory "assertions of a serious medical condition" are insufficient to verify that a serious medical condition existed).

Furthermore, no evidence has been presented to show that Major McKee was aware of a substantial risk of serious harm to Plaintiff and took no steps to alleviate or remedy such risk. The competent summary judgment evidence instead shows that: (1) Plaintiff filed several grievances in the McConnell Unit complaining about being poisoned; (2) Plaintiff repeatedly spoke with Major McKee about being poisoned; and (3) none of the investigations into Plaintiff's grievances ever substantiated Plaintiff's claims of being poisoned by other inmates who had access to his food trays. Given that investigations were undertaken into Plaintiff's claims after he talked with Major McKee and these investigations resulted in no findings to substantiate Plaintiff's claims, no genuine issues of material fact exist as to whether Major McKee acted with deliberate indifference to a substantial risk of serious harm to Plaintiff's health and safety.

Accordingly, even when taking as true the evidence in a light most favorable to Plaintiff, the uncontroverted summary judgment evidence demonstrates that Plaintiff has failed to state a failure to protect claim against Major McKee.

### *Step 2 – Objective reasonableness*

Because plaintiff has failed to state a constitutional violation as to Major McKee, it is unnecessary to examine whether his actions were objectively reasonable. *See Saucier*, 533 U.S. at 201 (if the facts alleged do not establish that the officer's conduct violated a

constitutional right, then the qualified immunity analysis need proceed no further and qualified immunity is appropriate). Thus, it is respectfully recommended that Major McKee be granted summary judgment in his favor as to Plaintiff's Eighth Amendment failure to protect claim and that this claim be dismissed with prejudice.

## VI. RECOMMENDATION.

For the foregoing reasons, Major McKee has demonstrated that no genuine issue of a material fact exists as to his entitlement to qualified immunity, and it is respectfully recommended that his motion for summary judgment (D.E. 42) be GRANTED and that Plaintiff's Eighth Amendment failure to protect claim against Major McKee be DISMISSED with prejudice. It is respectfully recommended further that Plaintiff's "Dispositive Motion" (D.E. 46) be DENIED. Lastly, it is respectfully recommended that the Court also adopt the undersigned's December 8, 2016 M&R. (D.E. 8).

Respectfully submitted this 21st day of August, 2017.

*Jason Libby*
Jason B. Libby
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).